1  Douglas A. Hofmann, WSBA #6393          The Crypto Lawyers, LLP
   John A. Knox, WSBA #12707               Joseph J. Collement (*PHV* to be filed)
2  Williams, Kastner & Gibbs PLLC          Rafael Yakobi (*PHV* to be filed)
   601 Union Street, Suite 4100           1041 Market Street, #340
3  Seattle, WA  98101-2380                San Diego, CA  92101-7233
   Tel:  (206) 628-6600                   Tel: (805) 280-6944
4
5  Timothy G. Blood (*PHV* to be filed)
   Thomas J. O'Reardon II (*PHV* to be filed)
6  Aleksandr J. Yarmolinets
     (*PHV* to be filed)
   Blood Hurst & O'Reardon, LLP
7  501 West Broadway, Suite 1490
   San Diego, CA  92101
8  Tel: (619) 338-1100

9  Attorneys for Plaintiff

10

11                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF WASHINGTON

12  REFAEL SOFAIR, individually and on       NO.
    behalf of all others similarly situated,
13                                            CLASS ACTION COMPLAINT
                   Plaintiff,
14                                            CLASS ACTION
    v.
15                                            JURY TRIAL DEMANDED
    GIGA WATT, INC., GIGAWATT PTE.
16  LTD., DAVID MATTHEW CARLSON,
    and DOES 1-10,
17
                   Defendants.
18

19

20

CLASS ACTION COMPLAINT - 1

6626892.1

Plaintiff Refael Sofair ("Plaintiff") brings this action on behalf of himself, all others similarly situated and the general public against defendants Giga Watt, Inc., GigaWatt Pte. Ltd., David Matthew Carlson and Does 1-10 (together, "Giga Watt" or "Defendants"). Plaintiff alleges on information and belief, except for information based on personal knowledge, as follows:

## NATURE OF THE CASE

1.    This class action seeks monetary and injunctive relief to remedy Defendants' failure to timely deploy computer equipment and services to mine cryptocurrency as represented and promised. Defendants fraudulently took thousands of dollars from Plaintiff and each Class Member, knowing they would not deliver on the representations they made to Plaintiff and the Class Members.

2.    Cryptocurrencies like Bitcoin, Litecoin, Dash, and Ethereum are digital currencies not issued or backed by a government. Instead, these cryptocurrencies are powered by blockchain technology. A blockchain is a ledger of transactions much like a bank maintains. However, unlike banks, copies of that ledger are distributed among a network of unaffiliated computers all over the world who verify, process, and secure every transaction using cryptography. The process by which these computers validate cryptocurrency transactions and release new cryptocurrency units into circulation is referred to as "mining." Mining can be

CLASS ACTION COMPLAINT - 2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6626892.1

1    performed by anyone, provided they have the right computer equipment and access

2    to sufficient amounts of electricity to run the equipment. In return for their efforts,

3    miners earn newly released cryptocurrency. Because the mining computers are so

4    powerful, they consume large amounts of electricity and generate large amounts of

5    heat. As a result, mining is typically conducted in a handful of locations in the

6    country where the electricity and land necessary to set up large computer server

7    farms are relatively inexpensive.

8    　　　3.    Defendants market a full-service, turnkey cryptocurrency mining

9    solution to people who want to earn money and profit from mining. Defendants'

10    turnkey service includes the sale, set up and operation of the specialized computer

11    equipment at its physical mining facilities in the State of Washington, and then

12    continuing to provide low-cost hosting, maintenance, and repair of the mining

13    equipment. Defendants then distribute the payment earned from cryptocurrency

14    mining to their customers. For the customers, mining is supposed to be a passive

15    way to earn money. They pay Defendants for the set up, then Defendants operate

16    the equipment to generate payment for their customers.

17    　　　4.    Contrary to their promises, Defendants employ a bait-and-switch

18    scheme where they charge and collect up to $3,600 or more for each mining set up,

19    but fail to actually set up or operate the cryptocurrency mining equipment.

20

CLASS ACTION COMPLAINT - 3

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6626892.1

Delaying operation of the cryptocurrency mining service is very costly to customers, especially since mining equipment has a deflationary lifespan and because mining rewards decrease over time. Plaintiff and the Class Members have been injured by Giga Watt's deceptive acts and practices in that they purchased mining services from Giga Watt reasonably believing Giga Watt would deploy the equipment and provide the promised mining hosting services in or around the time the mining equipment was to be purportedly delivered to Giga Watt's facilities in Washington State and that did not occur.

5.      Plaintiff brings this action on behalf of himself and a class of similarly situated purchasers defined as all those who have purchased mining services from Giga Watt. On behalf of himself and the Class Members, Plaintiff seeks redress and injunctive relief requiring Defendants to truthfully inform purchasers. Defendants operate an enterprise in violation of the federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961, *et seq.* ("RICO")), and otherwise engage in conduct which is unfair and deceptive, constitutes a systemic breach of contract, including breaching the implied covenant of good faith and fair dealing, violating the common law, and has resulted in Defendants' unjust enrichment. Based on these violations, Plaintiff seeks injunctive relief, damages, restitution and declaratory relief.

CLASS ACTION COMPLAINT - 4

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) and 28 U.S.C. § 1331. The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 Class Members and greater than two-thirds of the Class Members reside in states other than the states in which Defendants are citizens. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because the claims form part of the same case or controversy.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965: Many of the acts and transactions giving rise to this action occurred in this District; Defendants' scheme emanated from this District; Defendants are authorized to conduct business in this District; and Defendants have intentionally availed themselves of the laws and markets within this District through the promotion, marketing, distribution and sale of the mining equipment and services in this District, do substantial business in this District, and are subject to personal jurisdiction in this District. Further, Giga Watt, Inc. is headquartered in this District.

8.      This Court has personal jurisdiction over Defendants because Defendants are amenable to service of process, are co-conspirators, and each has

CLASS ACTION COMPLAINT - 5

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1  sufficient minimum contacts with this District and has purposefully availed itself

2  of the privilege of conducting business in the State of Washington so as to render

3  the Court's exercise of jurisdiction permissible under traditional notions of fair

4  play and substantial justice. This Court also has personal jurisdiction over all

5  Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) because they

6  would be subject to the jurisdiction of a court of general jurisdiction in

7  Washington.

8                                              **PARTIES**

9          9.      Plaintiff is a citizen of the State of New York. From August 18, 2017

10 through August 29, 2017, Plaintiff purchased Defendants' mining service,

11 including the equipment and hosting services for eight mining computers that were

12 to be operational at Giga Watt's Washington facility shortly after delivery. The

13 purchases included:

14         a.      August 18, 2017, one Antminer L3+ cryptocurrency miner and one
                   Antminer S9 cryptocurrency miner for a total of $4,190.00 that Giga
15                 Watt promised would be delivered and deployed/operational in "Late
                   October."
16
           b.      August 21, 2017, three Antminer D3 Dash cryptocurrency miners for
17                 $6,897.00 that Giga Watt promised would be delivered and
                   deployed/operational in "November."
18
           c.      August 22, 2017, two Antminer S9 miners for $3,400.00 that Giga
19                 Watt promised would be delivered and deployed/operational in "Late
                   October."
20

CLASS ACTION COMPLAINT - 6

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6626892.1

d.    August 29, 2017, one Antminer L3+ miner for $2,490.00 that Giga Watt promised would be delivered and deployed/operational in "Late October."

10.    Pursuant to Giga Watt's representations, on which Plaintiff relied, the equipment Plaintiff purchased was to be hosted and operated at Giga Watt's facilities upon delivery. Giga Watt either substantially delayed deployment or has flatly failed to deploy the equipment, as follows:

| Mining Equipment (Number Purchased) | Represented Deployment Date | Actual Deployment Date |
|---|---|---|
| S9 Miner (3) | October 2017 | Not deployed. |
| D3 Miner (3) | November 2017 | One miner not deployed. Two delayed until February 2018. |
| L3+ Miner (2) | October 2017 | Two miners delayed until February 2018. |

Had Plaintiff known Giga Watt would not provide the equipment and services as promised, Plaintiff would not have purchased the mining equipment from Giga Watt and would not have lost the money and income caused by the payment for the mining services and the delays. Plaintiff suffered injury in fact and lost money and property as a result of Defendants' conduct.

11.    Defendant Giga Watt, Inc. is a Washington corporation, with its principal place of business in East Wenatchee, Washington. From its offices located in East Wenatchee, Giga Watt markets and sells cryptocurrency mining

CLASS ACTION COMPLAINT - 7

services, including equipment and hosting services to customers worldwide. Giga Watt, Inc. is controlled by its CEO and founder, David Matthew Carlson. Giga Watt, Inc. is a co-participant in the unlawful conduct at issue.

12.    Defendant GigaWatt Pte. Ltd. is a Singapore private exempt company (U.S. equivalent of a closely held corporation), with its principal place of business in Singapore. GigaWatt Pte. Ltd. markets and sells cryptocurrency mining services, including equipment and hosting services to customers worldwide, and ships the mining equipment to the State of Washington to be hosted by Giga Watt, Inc. GigaWatt Pte. Ltd. actively conducts marketing and sales activities throughout the U.S. GigaWatt Pte. Ltd. is a co-participant in the unlawful conduct at issue.

13.    Defendant David Matthew Carlson ("Carlson") is a resident of the State of Washington. Carlson formed Giga Watt, Inc. on December 15, 2016; purportedly as a successor to the Bitcoin-mining company MegaBigPower, which he founded in 2012. Carlson is the CEO and founder of defendant Giga Watt, Inc. Carlson is intimately involved in the relationships and operations between and amongst Giga Watt, Inc. and GigaWatt Pte. Ltd. Carlson, using the other defendants, created and implemented the scheme alleged here and, along with the other defendants, is responsible for the acts and omissions alleged. Carlson was consulted and made decisions regarding numerous issues affecting the marketing,

CLASS ACTION COMPLAINT - 8

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6626892.1

sale and deployment of the cryptocurrency mining services at issue. Carlson was involved in advertising decisions, and actively advertised Giga Watt's mining services by himself appearing in promotional videos for Giga Watt, and participating in in-person sales presentations to potential Giga Watt customers. Carlson has also taken part in other miscellaneous aspects of Giga Watt's operations, including very actively responding to inquiries from Giga Watt's customers and the public through Giga Watt's instant messaging service, including providing information regarding the status of mining equipment deployment.

14.    Plaintiff is ignorant of the true names, capacities, relationships and extent of participation in the conduct alleged against the defendants sued herein as Does 1 through 10, but is informed and believes that the Doe defendants are legally responsible for the wrongful conduct alleged herein and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege the true names and capacities of the Doe defendants when ascertained.

15.    As alleged further below, at all relevant times, each of the Defendants was the agent, employee, representative, partner, joint venturer, and/or alter ego of the other Defendants and, in doing the things alleged herein, was acting within the course and scope of such agency, employment, representation, on behalf of such

CLASS ACTION COMPLAINT - 9

partnership or joint venture, and/or as such alter ego, with the authority, permission, consent, and/or ratification of the other Defendants.

## FACTUAL ALLEGATIONS

### A.   Cryptocurrency Mining

16.     Cryptocurrencies are digital currencies, which use encryption techniques to regulate the generation of new currency units and process cryptocurrency-based transactions. Examples of cryptocurrencies are Bitcoin, Litecoin, Dash, and Ethereum. Unlike fiat currency (such as U.S. dollars and Euros), cryptocurrencies are not issued or backed by a government. Instead, they are released into circulation through a digital, decentralized process called "mining."

17.     Cryptocurrency mining has two purposes. First, it is the computerized process by which cryptocurrency-based transactions are recorded, verified and approved, thereby allowing cryptocurrency to be used as a medium of exchange or unit of account. Second, mining is how new cryptocurrency units, such as Bitcoin "coins," are released. For example, approximately every 10 minutes, 12.5 new Bitcoins are released into circulation as a "block reward" for miners, who proportionately share in the reward relative to their efforts in securing the cryptocurrency network. To earn a block reward, miners must perform millions of

CLASS ACTION COMPLAINT - 10

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6626892.1

simple, but time and energy-consuming computations to validate previous cryptocurrency transactions. In return for mining, miners also earn transaction fees associated with transactions they record and verify. These rewards create the incentive for miners to maintain the operation and integrity of the cryptocurrency network.

18.    The monetary value of rewards from mining cryptocurrency is substantial. In June 2018, the overall market capitalization of cryptocurrency exceeded $300 billion, with Bitcoin responsible for nearly half the value. In June 2011, one Bitcoin was worth pennies, but by the end of 2017, one Bitcoin was worth nearly $20,000.

19.    The value of each cryptocurrency coin is based, in part, on a finite number of total available coins. For example, over 17,000,000 out of 21,000,000 Bitcoins have been mined and are therefore currently in circulation, and 58,000,000 out of 84,000,000 Litecoins have been mined and are in circulation. As the total number of remaining non-circulating coins decreases, the block reward for mining also decreases. Meanwhile, generally, the difficulty of the calculations that a miner must compute increases over time as more miners join the network. As a result, mining equipment depreciates quickly and the total units of cryptocurrency

CLASS ACTION COMPLAINT - 11

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6626892.1

1    to be earned decreases. Miners can only remain profitable with low overhead and

2    cutting-edge technology.

3        20.    Carlson understands this, admitting "it's clear that the role of miners

4    is to be focused on deploying as much processing equipment as they can, while

5    focusing on improving the efficiency of the hardware, the facilities and the

6    operations team."[1]

7        21.    In theory, anyone with access to the internet and suitable computer

8    hardware can participate in mining. However, for most people, it is cost prohibitive

9    and otherwise infeasible to host their own mining equipment because mining

10    requires expertise to operate and maintain the specialized hardware, the equipment

11    presents safety hazards, the process generates a large amount of heat because of the

12    computing power required, and electricity costs can render the operation

13    unprofitable.

14        22.    Giga Watt represents that it solves these problems by: (a) offering low

15    cost mining that provides miners with dedicated hosting for safe, reliable and

16    profitable operations; (b) taking advantage of Giga Watt's "vast experience;" and

17

18    _____

     [1] https://bitcoinmagazine.com/articles/giga-watt-ceo-we-desperately-need-balance-

19        power-mining-space/

20

CLASS ACTION COMPLAINT - 12

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6626892.1

(c) taking advantage of its physical locations in Washington where electricity rates are "extraordinarily low."

**B.    Giga Watt's "Turnkey" Mining Services**

23.    The Giga Watt entities were formed in December 2016. Carlson formed Giga Watt, Inc. on December 15, 2016. GigaWatt Pte., Ltd. was then formed on December 28, 2016.

24.    Through its websites, Giga Watt advertises that its standard, full-service mining solution includes the purchase and delivery of the mining equipment, its setup, and its operation/hosting at Giga Watt's mining facilities in Washington. Giga Watt represents that it will mine various cryptocurrency, including Bitcoin, Litecoin, Dash, and Ethereum. Internally, Giga Watt concedes that its mining equipment has a 2.5-year life span. Giga Watt charges customers for the purchase, delivery and operation/hosting of the mining equipment at its facilities in Washington State.

25.    The mining equipment sells for substantially less than what Defendants charge. For example, while Giga Watt charges $800.00 for an Antminer D3 miner, the manufacturer charges only $133.00.[2] However, Plaintiff

---

[2] https://shop.bitmain.com/?lang=en (last visited September 24, 2018)

CLASS ACTION COMPLAINT - 13

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

and Class Members are willing to pay the additional amount because they are purchasing Defendants' full-service, turnkey mining solution.

26.    For ongoing hosting, Giga Watt assesses customers' daily charges, which include electricity costs, maintenance, and facility rental. Payment for the hosting services is deducted daily from the mining rewards generated by the customer's equipment.

27.    Giga Watt represents there is no hosting set up fee if consumers purchase their mining equipment from Giga Watt.

28.    According to Giga Watt, it has constructed its air-cooled "Giga Pod" physical hosting structures throughout Washington State.

29.    Giga Watt markets and promotes its turnkey mining services, its "vast experience," its "proprietary groundbreaking" mining facilities, and its low-cost Washington facilities where electricity is cheap and plentiful—among the lowest rates in the world.

30.    From May 19, 2017 through July 31, 2017, Giga Watt raised funds through an Initial Coin Offering ("ICO"). Through the ICO, Defendants raised millions of dollars by selling "tokens" "representing the right to use the Giga Watt processing center's capacity, rent-free for 50 years." Giga Watt refers to these tokens as "WTT Tokens," and the participating investors as "WTT Token

CLASS ACTION COMPLAINT - 14

1  Holders." In addition to providing participating investors with tokens, for every

2  100 tokens sold through the ICO, 15 tokens were issued and retained for Giga

3  Watt's "team members, partners and advisors."[3] Owning tokens is not required to

4  purchase mining equipment from Giga Watt or to have them host it. Plaintiff is not

5  a token holder. However, unbeknownst to Plaintiff and the Class Members, and not

6  disclosed to them on Giga Watt's websites or otherwise, WTT Token Holders

7  (including Giga Watt's team members, partners and advisors) received hosting

8  priority over non-token holders.

9      31.    Throughout its websites and in standardized purchase order

10  confirmations and payment receipts, Giga Watt promises to deliver and host (*i.e.*,

11  begin operating) mining equipment by a date certain.

12      32.    On its websites (where the Class Members purchased the mining

13  equipment), Giga Watt listed the type of mining equipment available for purchase,

14  along with its initial cost and the time period by which the equipment would be

15

16  _____

16  [3] Each token (sold in the ICO for between $1-$1.20) represents 1 Watt's worth of

17      the processing center's capacity. Plaintiff's S9 miners each require 1453 Watts of

18      power. Therefore, it would be necessary to purchase at least 1453 ICO tokens just

19      to power one miner (rent-free).

20

CLASS ACTION COMPLAINT - 15

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6626892.1

operational. The following is an example of Gig Watt's offer to sell the Alpha

Miner GPU-200 computer to be ready in "May":



Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6626892.1

33. Giga Watt also sent customers order confirmations and payment receipts that repeated the time of deployment. For example, Giga Watt provided Plaintiff the following order confirmation for one of his purchases, which stated a deployment date of "Late October:"



CLASS ACTION COMPLAINT - 17

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6626892.1

1    34.    The payment receipt for this order repeated the "Late October"

2  deployment date:



3  35.    The timing representations are false, misleading and likely to deceive

Giga Watt customers. Giga Watt misrepresented and failed to disclose that Plaintiff

and the Class Members' mining equipment would not be deployed and operational

in or around the time the equipment was to be delivered to Giga Watt. This

CLASS ACTION COMPLAINT - 18

information is material because Plaintiff and the Class Members purchased the mining equipment to use it for its ordinary, intended and reasonable purpose—to mine cryptocurrency, and in return, receive financial rewards, in an incredibly time-sensitive environment where the equipment can rapidly depreciate in a matter of months because of technological advances, and the sheer number of calculations determine the amount of the block reward.

36.    Plaintiff and the Class Members purchased the mining equipment reasonably believing the equipment would be deployed and begin mining as Giga Watt promised.

37.    Giga Watt did not permit customers to have their mining equipment originally shipped to any location other than Giga Watt's facilities in Washington. Giga Watt required the purchased equipment be first hosted by Giga Watt before a customer could request Giga Watt to send their equipment to another location.

38.    Giga Watt has consistently advertised that its facilities are the "Best Home for Computing Power" given the "Extraordinarily low effective electricity cost," "More than reasonable maintenance and rental fees," and no cost setup fee "if you buy your equipment from us." According to Giga Watt, there are "No hidden costs" with its hosting services.[4]

_____

[4] https://giga-watt.com/ (last visited September 24, 2018)

CLASS ACTION COMPLAINT - 19

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6626892.1

1



2

3

4

5

6

7

8

9

10    39.    Similarly, Giga Watt induces customers to purchase mining

11  equipment and utilize its hosting services by advertising that it is "able to offer

12  such a low hosting fee" because of its "vast experience": [5]

13

14



15

16

17

18

19  ───────────────
[5] *Id.*

20

CLASS ACTION COMPLAINT - 20

6626892.1

40.    According to Giga Watt, it's full-service, turnkey solution is a simple five-step process: (1) Choose your equipment and hosting plan; (2) Place an order; (3) Receive updates about your equipment delivery and status; (4) Connect your wallet; and (5) Begin Computing.[6]



41.    While simultaneously failing to disclose that it will not deploy the mining equipment being purchased, Giga Watt's marketing conveys a sense of urgency to induce potential customers to purchase mining equipment. Throughout its website Giga Watt advertises (even today) that customers should "Order your miners today before inventory runs out!"[7]

---

[6] *Id.*

[7] https://www.gigawatt.sg/shop/ (last visited September 24, 2018);

https://www.gigawatt.sg/giga-watt-hosting/ (last visited September 24, 2018)

CLASS ACTION COMPLAINT - 21

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6626892.1

1    42.    Likewise, Giga Watt continues to advertise that customers should

2    choose Giga Watt for hosting their mining equipment. On its website, Giga Watt

3    explains the purported advantages of its hosting services, while failing to disclose

4    that it will not deploy the mining equipment purchased by Plaintiff and the Class

5    Members:[8]



16    43.    Contrary to its representations, Giga Watt fails to begin mining as

17    promised. Instead, mining is delayed, sometimes indefinitely. Any delay results in

---

[8] https://www.gigawatt.sg/giga-watt-hosting/ (last visited September 24, 2018)

CLASS ACTION COMPLAINT - 22

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1    significant and immediate economic loss, which includes the loss of income from

2    mining and the rapid devaluation of the mining equipment.

3        44.    As Carlson admits, operational delay is expensive: "My honest

4    opinion – don't ever sit on miners for 10 weeks."[9]



**퐁 킨맨 Foong**                                                      edited 7:19:34 PM
Thanks Dave, is it advisable to sell miners first or to wait it
off for another 10 weeks? LTC difficulty remain stable
although bitmain releasing their sept batch gradually.

**Dave Carlson**                                                        7:20:08 PM
│ **Viking Raider**
│ So we're waiting for new UL power supplies? Where are you g...
I contacted the Dept of Revenue  (Washington State)
Their liason for regulatory compliance/issues like this states that
Labor & Industries has zero purview over devices that run
voltages less than line voltage.  Miners are 12V *after* the PSU,
so I've got State level goverment support that should keep L&I
focused on the PSU only

**Mike**                                                                7:20:41 PM
That's good to hear



**Dave Carlson**                                                        7:23:08 PM
│ **퐁 킨맨 Foong**
│ Thanks Dave, is it advisable to sell miners first or to wait it off...
My honest opinon - don't ever sit on miners for 10 weeks.
Especially something with a huge amount of ASIC headed its way
like LTC or DASH.  Just my opinion.  BTC mining might be stable
enough that this isn't a huge issue, but sitting with LTC and DASH
is a gamble IMHO.  I felt that the selling option was a genius
move on Hayden's part, because it gives the best of both worlds -
gets you a profit and eliminates the problem.

You can easily decide to come back to mining later...



**퐁 킨맨 Foong**                                                        7:24:32 PM
Thanks for honest advise and opinion, think i would sold miner
first and buy back newer model when pod is fully completed

---

[9] https://web.telegram.org/#/im?p=@wtt_token (message dated October 7, 2017)

CLASS ACTION COMPLAINT - 23

45.     In addition to the facts alleged above and throughout, Defendants operated as agents, employees, representatives, partners, joint venturers, and/or alter egos of the other Defendants.

46.     Giga Watt currently maintains at least three interrelated websites: one for its mining equipment hosting facility in Washington (www.Giga-Watt.com); one for its mining equipment sales facility in Singapore (www.GigaWatt.sg); and one for its above-described "Initial Coin Offering" (wtt.cryptonomos.com), which was hosted on a hosting platform owned and operated by Cryptonomos Pte. Ltd. The first two websites operate seamlessly as one website which, from the customer's point of view, are one and the same. All three websites appear to have been built by or on the same website builder and share a common brand identity. This includes using identical branding logos. The websites purportedly designed and operated by Giga Watt, Inc. and GigaWatt Pte. Ltd. also market the services of one another and electronically link to one another. The websites for Giga Watt, Inc. and Cryptonomos were registered on the same date, November 10, 2016. Cryptonomos maintains the same office address in Singapore as GigaWatt Pte. Ltd.

47.     As of September 17, 2018, the websites for Giga Watt, Inc. (www.Giga-Watt.com) and GigaWatt Pte. Ltd. (www.GigaWatt.sg) appear as follows:

CLASS ACTION COMPLAINT - 24

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6626892.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

**www.GigaWatt.sg**



**www.Giga-Watt.com**



CLASS ACTION COMPLAINT - 25

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

48.     The Giga Watt entities work exclusively with one another in offering the turnkey cryptocurrency mining services. Thus, GigaWatt Pte. Ltd. sells and ships its mining equipment only to the Washington facilities for Giga Watt, Inc.'s customers, and Giga Watt, Inc. hosts mining equipment sold and shipped by GigaWatt Pte. Ltd.

49.     At various times, Defendants established a "Giga Watt Project Team." The Giga Watt Project Team is comprised of persons from Giga Watt, Inc. and from GigaWatt Pte. Ltd. For instance, the Giga Watt Project Team included Giga Watt, Inc.'s Carlson (CEO) and Adam West (VP Business Development Direct), as well as GigaWatt Pte. Ltd.'s Michael Savuskan (CEO) and Hayden Gill (VP Sales). In fact, Hayden Gill was the VP of Sales for both Giga Watt, Inc. and GigaWatt Pte. Ltd.

## CLASS ACTION ALLEGATIONS

50.     Plaintiff brings this case as a class action pursuant to Rules 23(b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure. The proposed Class consists of:

> All persons within the United States who purchased mining services from Giga Watt but mining did not start at the time represented at the time of purchase.

CLASS ACTION COMPLAINT - 26

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6626892.1

51.    In the alternative, Plaintiff brings this action on behalf of himself and all other similarly situated New York consumers pursuant to Rules 23(b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure and seeks certification of the following New York Class:

> All New York residents who purchased mining services from Giga Watt but mining did not start at the time represented at the time of purchase.

52.    The Class excludes Giga Watt's officers and directors, current or former employees, as well as any judge, justice or judicial officer presiding over this matter and members of their immediate families and judicial staff.

53.    ***Numerosity***. The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains thousands of members. While the precise number of Class members is unknown to Plaintiff, it is known to Defendants.

54.    ***Existence and Predominance of Common Questions of Law and Fact.*** Common questions of law and fact exist as to all Class Members and predominate over any questions affecting only individual Class members. All Class Members have been subject to the same conduct and their claims arise from the

CLASS ACTION COMPLAINT - 27

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6626892.1

same legal claims. The common legal and factual questions include, but are not limited to, the following:

(a)     whether Giga Watt's conduct violated RICO;

(b)     whether Giga Watt engaged in unlawful or unfair business practices;

(c)     whether Giga Watt breached its contract with Plaintiff and Class Members;

(d)     whether Giga Watt's conduct constitutes a breach of the implied covenant of good faith and fair dealing;

(e)     whether the Plaintiff and the Class are entitled to injunctive relief;

(f)     whether the Plaintiff and the Class are entitled to declaratory relief;

(g)     whether Giga Watt has been unjustly enriched by its improper course of action; and

(h)     whether Plaintiff and Class Members are entitled to equitable relief, and the proper measure of that equitable relief.

55.     *Typicality.* Plaintiff's claims are typical of the claims of the Class Members in that Plaintiff is a member of the Class that he seeks to represent.

56.     *Adequacy of Representation.* Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff has retained counsel

CLASS ACTION COMPLAINT - 28

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6626892.1

1    experienced in the prosecution of this type of class action litigation. Plaintiff has

2    no adverse or antagonistic interests to those of the Class.

3        57.    ***Superiority.*** A class action is superior to all other available means for

4    the fair and efficient adjudication of this controversy. Individualized litigation

5    would create the danger of inconsistent or contradictory judgments arising from the

6    same set of facts. Individualized litigation would also increase the delay and

7    expense to all parties and the court system from the issues raised by this action.

8    The burden and expense that would be entailed by individual litigation makes it

9    impracticable or impossible for Class members to prosecute their claims

10    individually. Further, the adjudication of this action presents no unusual

11    management difficulties.

12        58.    Unless a class is certified, Giga Watt will retain monies received as a

13    result of its improper conduct. Unless a classwide injunction is issued, Giga Watt

14    will continue to commit the violations alleged. Giga Watt has acted or refused to

15    act on grounds that are generally applicable to the Class so that injunctive and

16    declaratory relief is appropriate to the Class as a whole.

17

18

19

20

CLASS ACTION COMPLAINT - 29

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6626892.1

## COUNT I

### *Violation of the Racketeer Influenced and Corrupt Organizations Act,*

### *18 U.S.C. § 1962(c)-(d)*

### (Against All Defendants)

59.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

60.    Giga Watt conducts its legitimate and illegitimate business through affiliates and subsidiaries, each of which is a separate legal entity. At all relevant times, the Defendants have been "persons" under 18 U.S.C. § 1961(3) because they are capable of holding, and do hold, "a legal or beneficial interest in property."

61.    It is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).

62.    It is also unlawful for "any person to conspire to violate" Section 1962(c), among other provisions. *See* 18 U.S.C. § 1962(d).

63.    Defendants have aggressively sought to increase their sales of the cryptocurrency mining services through a fraudulent scheme designed to bolster

CLASS ACTION COMPLAINT - 30

their revenues, augment profits, increase their market share of the hosted cryptocurrency mining market, and extract revenues of millions of dollars from Plaintiff and the Class Members. Finding it impossible to achieve their ambitious goals lawfully, however, Defendants resorted to cheating through their fraudulent scheme and conspiracy. The illegal scheme was hatched and executed with complicity by Defendants. Defendants, along with other entities and individuals, were employed by or associated with, and conducted or participated in the affairs of, a RICO enterprise (defined below and referred to as the "Giga Watt RICO Enterprise"). The Giga Watt RICO Enterprise's purpose was to deceive Plaintiff, Class Members and the public into believing Giga Watt's mining services included mining equipment that would be delivered from overseas, where it would be promptly deployed to mine various cryptocurrencies in Washington State, which location Defendants ostensibly selected to offer a low cost, turnkey hosting solution that promised to increase revenues from Defendants' mining services. As a direct result of their fraudulent scheme and common course of conduct, Defendants were able to extract revenues of millions of dollars from Plaintiff and the Class Members. As explained in detail below, the Defendants' misconduct violated Sections 1962(c) and (d).

CLASS ACTION COMPLAINT - 31

*Description of the Giga Watt RICO Enterprise*

64.    A RICO enterprise consists of "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact enterprise requires three structural features: (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit those associates to pursue the enterprise's purpose.

65.    At all relevant times, Defendants, along with other individuals and entities, including unknown third parties involved in the marketing and sale of the cryptocurrency mining equipment and hosting services, operated an association-in-fact enterprise. This association-in-fact enterprise was formed for the purpose of selling the cryptocurrency mining equipment throughout the U.S., and through which they conducted a pattern of racketeering activity under 18 U.S.C. § 1961(4).

66.    Alternatively, each of the Defendants constitutes a single legal entity "enterprise" within the meaning of 18 U.S.C. § 1961(4), through which the Defendants conducted a pattern of racketeering activity. The Defendants' separate legal statuses facilitated the fraudulent scheme and provided a hoped-for shield from liability for the Defendants and their co-conspirators.

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

67.    In furtherance of the scheme, the Defendants each affirmatively misrepresented or concealed the truth about the availability of Giga Watt's mining equipment, Giga Watt's hosting capabilities, and their intentions to Plaintiff, the Class Members, and the general public. Specifically, Defendants claimed the mining equipment would be operational within the promised timeframe and subsequently hosted through Giga Watt's low-cost facilities with access to cheap and plentiful electricity. In truth, Giga Watt did not have the equipment, capacity, ability, or intention to set up and host the mining equipment purchased by Plaintiff and the Class Members.

### The Giga Watt RICO Enterprise Sought to Fraudulently Increase Defendants' Profits and Revenues

68.    Each Defendant benefited financially from the Giga Watt RICO Enterprise. Defendants were able to sell mining equipment and services.

69.    GigaWatt Pte. Ltd., Giga Watt, Inc., and Carlson profited through the marketing and sale of the turnkey mining solution to Plaintiff and the Class Members. GigaWatt Pte. Ltd., Giga Watt, Inc., and Carlson did so by representing that the mining equipment purchased from Giga Watt would be promptly deployed and hosted using the turnkey, full-service, low-cost operations of Giga Watt's facilities in Washington, where customers would purportedly benefit from extraordinarily low electricity costs, low hosting fees, 24/7 maintenance of the

CLASS ACTION COMPLAINT - 33

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

mining equipment, a growing number of proprietary mining facilities, and Giga Watt's track record of building and launching successful mining facilities. And because the Defendants represented the mining equipment would be hosted at the low-cost facilities, they increased their profits by selling more mining equipment, obtaining mining rewards for themselves, and charging Plaintiff and the Class Members to pay for Defendants' operating expenses (e.g., ongoing construction, overhead, and electricity expenses).

70.    In 2012, Carlson founded MegaBigPower with the stated goal of building the world's first megawatt-scale Bitcoin mining center. MegaBigPower, which offered and sold Bitcoin mining services to the general public, became one of the largest single-operator mines in the world. Carlson sold MegaBigPower's assets to Giga Watt, Inc., which as of May 2017, had completed three mining facilities designed and built under the supervision of the original MegaBigPower team. Carlson has supervised, and directed the marketing and sale of the mining equipment and hosting services offered and sold by Giga Watt, Inc. and GigaWatt Pte. Ltd., and otherwise participated in the operation and management of the Giga Watt RICO Enterprise itself. Including by virtue of his substantial, personal participation in responding to customers on Giga Watt's Telegram online messaging service, Carlson knew about the beliefs and expectations of the Class

CLASS ACTION COMPLAINT - 34

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1    Members relating to timing of the deployment and hosting of their mining

2    equipment.

3         71.    At all relevant times, the Giga Watt RICO Enterprise: (a) had an

4    existence separate and distinct from each Defendant; (b) was separate and distinct

5    from the pattern of racketeering in which the Defendants engaged; and (c) was an

6    ongoing and continuing organization consisting of legal entities, including the

7    Defendants, along with other individuals and entities, including unknown third

8    parties that operated an association-in-fact enterprise, which was formed for the

9    purpose of ensuring Giga Watt's mining equipment and hosting services were sold

10   through a fraudulent marketing campaign that promised a full-service, turnkey

11   mining solution at the expense of Plaintiff and the Class Members who believed

12   they were buying into Defendants' full range of mining-related services, which

13   included both equipment sales and hosting.

14        72.    Defendants and their co-conspirators, through the illegal Giga Watt

15   RICO Enterprise, engaged in a pattern of racketeering activity, which involved a

16   fraudulent scheme to increase revenue for Defendants and the other entities and

17   individuals associated-in-fact with the Enterprise's activities through the illegal

18   scheme to sell a full range of mining-related services that included both equipment

19   sales and hosting, without providing hosting services.

20

CLASS ACTION COMPLAINT - 35

73.    The activities engaged in by the Giga Watt RICO Enterprise affected interstate and foreign commerce because it involved commercial activities across state boundaries, such as the marketing, promotion, advertisement, distribution, and sale of mining equipment, repair and hosting services throughout the country, and the receipt of monies from the sale of the same.

74.    Within the Giga Watt RICO Enterprise, there was a common communication network by which co-conspirators shared information on a regular basis. The Giga Watt RICO Enterprise used this common communication network for purposes of marketing, pricing, and engaging in negotiations regarding the mining equipment and related deployment and hosting services, including their pricing, and for furtherance of the Giga Watt RICO Scheme.

75.    Each participant in the Giga Watt RICO Enterprise had systematic linkages to each other through corporate ties, contractual relationships, financial ties, and a continuing coordination of activities. Through the Giga Watt RICO Enterprise, the Defendants functioned as a single, continuing unit with the purpose of furthering the Giga Watt RICO Scheme.

76.    Defendants participated in the operation and management of the Giga Watt RICO Enterprise by directing its affairs, as described herein. While Defendants participated in, and are members of the Enterprise, they have a separate

CLASS ACTION COMPLAINT - 36

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6626892.1

existence from the Enterprise, including distinct legal statuses, different offices and roles, bank accounts, officers, directors, employees, individual personhood, reporting requirements, and financial statements.

77.    Defendants exerted substantial control over the Giga Watt RICO Enterprise, and participated in the affairs of the Enterprise by: (a) misrepresenting and/or concealing the existence, status or capabilities of Giga Watt's cryptocurrency mining facilities; (b) misrepresenting and/or concealing the true nature of the relationship and agreements between the members of the Enterprise and its effects on the pricing of mining equipment and hosting-related services; (c) otherwise misrepresenting and/or concealing the fraudulent nature of the turnkey, full-service mining operations being marketed and sold; (d) collecting revenues and/or profits from the sale of mining equipment and hosting-related services; and (e) ensuring the other Defendants and unnamed coconspirators complied with and concealed the fraudulent scheme.

78.    Without each Defendant's willing participation, the Giga Watt RICO Scheme and common course of conduct would not have been successful.

79.    Defendants directed and controlled the ongoing organization necessary to implement the scheme at meetings and through communications of

CLASS ACTION COMPLAINT - 37

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1   which Plaintiff cannot fully know at present, because such information lies in the

2   hands of the Defendants and others.

3   ***Predicate Acts: Mail and Wire Fraud***

4       80.    To carry out, or attempt to carry out, the scheme to defraud, the

5   Defendants, each of whom is a person associated-in-fact with the Giga Watt RICO

6   Enterprise, did knowingly conduct or participate, directly or indirectly, in the

7   affairs of the Giga Watt RICO Enterprise through a pattern of racketeering activity

8   within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c), and employed

9   the use of the mail and wire facilities, in violation of 18 U.S.C. § 1341 (mail fraud)

10  and § 1343 (wire fraud).

11      81.    Specifically, Defendants have committed, conspired to commit, or

12  aided and abetted in the commission of, at least two predicate acts of racketeering

13  activity (i.e., violations of 18 U.S.C. §§ 1341 and 1343), within the past ten years.

14      82.    The multiple acts of racketeering activity which Defendants

15  committed, or aided or abetted in the commission of, were related to each other,

16  posed a threat of continued racketeering activity, and therefore constitute a "pattern

17  of racketeering activity." The racketeering activity was made possible by

18  Defendants' regular use of the facilities, services, distribution channels, and

19  employees of the Giga Watt RICO Enterprise. Defendants participated in the

20

CLASS ACTION COMPLAINT - 38

scheme to defraud by using interstate emails and the Internet to transmit marketing and advertising, mailings and wires in interstate or foreign commerce.

83.    Defendants used, directed the use of, and/or caused to be used, thousands of interstate email, mail and wire communications in service of their scheme through virtually uniform misrepresentations, concealments, and material omissions.

84.    In devising and executing the illegal scheme, Defendants devised and knowingly carried out a material scheme and/or artifice to defraud Plaintiff and the Class Members or to obtain money from Plaintiff and the Class Members by means of materially false or fraudulent pretenses, representations, promises, or omissions of material facts. For the purpose of executing the illegal scheme, Defendants committed these racketeering acts, which number in the thousands, intentionally and knowingly with the specific intent to advance the illegal scheme.

85.    Defendants' predicate acts of racketeering (18 U.S.C.§ 1961(1)) include, but are not limited to:

(a)    <u>Mail Fraud</u>: Defendants violated 18 U.S.C. § 1341 by sending or receiving, or by causing to be sent and/or received, materials via the Internet, email, U.S. mail or commercial interstate carriers for the purpose of executing the unlawful scheme to market, price, and sell

CLASS ACTION COMPLAINT - 39

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6626892.1

1    mining equipment and hosting services by means of false pretenses,

2    misrepresentations, promises, and omissions.

3    (b)    <u>Wire Fraud</u>: Defendants violated 18 U.S.C. § 1343 by transmitting

4    and/or receiving, or by causing to be transmitted and/or received,

5    materials by interstate wire (i.e., email and use of the Internet for

6    advertising purposes) for the purpose of executing the unlawful

7    scheme to market, price, and sell mining equipment and hosting

8    services and defraud and obtain money on false pretenses,

9    misrepresentations, promises, and omissions.

10    86.    Defendants' use of the mails and wires include, but are not limited to:

11    (a) the transmission of marketing or other materials about the availability for

12    purchase of cryptocurrency mining equipment; (b) electronic communications

13    transmitting cryptocurrency mining equipment purchase order confirmations and

14    payment receipts to Plaintiff and the Class Members; (c) the transmission of

15    marketing or other materials about Giga Watt's hosting solutions, hosting

16    availability, and hosting expertise; (d) the physical transmission and/or distribution

17    of Plaintiff and the Class Members' mining equipment through the mails; (e) the

18    use of the Internet, including a customer-only portal on www.Giga-Watt.com to

19    transmit to Plaintiff and the Class Members the purported hosting status of their

20

CLASS ACTION COMPLAINT - 40

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

mining equipment; and (f) the use of the mails or wires to bill for or collect revenues and profits from the sale of mining equipment, mining equipment repairs, rental fees, and hosting charges.

87.    Defendants also communicated by interstate mail, and by interstate electronic mail with various other affiliates, offices, divisions, dealerships, partners and other third-party entities in furtherance of the scheme.

88.    The mail and wire transmissions described herein were made in furtherance of Defendants' scheme and common course of conduct designed to sell cryptocurrency mining services, and to fraudulently extract millions of dollars of revenue from Plaintiff and the Class Members.

89.    Many of the precise dates of the fraudulent uses of electronic communications, U.S. mail, and interstate wire facilities have been deliberately hidden, and cannot be alleged without access to Defendants' books and records. However, Plaintiff can and has described the types of predicate acts of mail and/or wire fraud, and the occasions on which the predicate acts would have occurred. They include thousands of communications to perpetuate and maintain the scheme, including the things and documents described above.

90.    Defendants have not undertaken the practices described herein in isolation, but as part of a common scheme and conspiracy. In violation of 18

CLASS ACTION COMPLAINT - 41

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

U.S.C. § 1962(d), Defendants conspired to violate 18 U.S.C. § 1962(c), as described herein. Various other persons, firms, and corporations, including third-party entities and individuals not named as defendants in this Complaint, have participated as co-conspirators with Defendants in these offenses and have performed acts in furtherance of the conspiracy to increase or maintain revenues, increase market share, and/or minimize losses for Defendants and their unnamed co-conspirators throughout the illegal scheme and common course of conduct.

91.    Defendants aided and abetted others in the violations of the above laws.

92.    To achieve their common goals, Defendants misrepresented and hid from Plaintiff, the Class Members, and the general public the true hosting capabilities of Giga Watt, and the true status of deploying the mining equipment purchased by Plaintiff and the Class Members.

93.    Defendants and each member of the conspiracy, with knowledge and intent, agreed to the overall objectives of the conspiracy and participated in the common course of conduct. Indeed, for the conspiracy to succeed, each of the Defendants and their co-conspirators had to agree to conceal the status and capabilities of their cryptocurrency mining operations.

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6626892.1

94.     Defendants knew, and intended that, Plaintiff and the Class Members would rely on the material misrepresentations and omissions made by them and incur damages as a result, including charges for mining equipment, lost mining profits, and rental, hosting and maintenance fees that they would not have otherwise incurred. Indeed, in the absence of the Defendants' violations of 18 U.S.C. § 1962(c) and (d), Plaintiff and the Class Members would not have purchased the cryptocurrency mining equipment, and the Giga Watt RICO scheme could not succeed.

95.     As described herein, Defendants engaged in a pattern of related and continuous predicate acts for years. The predicate acts constituted a variety of unlawful activities, each conducted with the common purpose of obtaining significant monies and revenues from Plaintiff and the Class Members based on their misrepresentations and omissions, while providing mining equipment that would not be deployed and hosted as promised. The predicate acts also had the same or similar results, participants, victims, and methods of commission. The predicate acts were related and not isolated events.

96.     During Defendants' sale of cryptocurrency mining equipment and hosting services, Giga Watt's true ability to host the equipment as promised was revealed to each of the Defendants. Nevertheless, the Defendants continued to

CLASS ACTION COMPLAINT - 43

disseminate misrepresentations regarding the full-service, turnkey cryptocurrency mining equipment and hosting package available for purchase, in furtherance of the scheme.

97.    By reason of, and as a result of the conduct of the Defendants, and in particular, their pattern of racketeering activity, Plaintiff and the Class Members have been injured in multiple ways, including but not limited to paying for mining equipment and hosting services, and lost mining revenue.

98.    Defendants' violations of 18 U.S.C. § 1962(c) and (d) have directly and proximately caused injuries and damages to Plaintiff and the Class Members who are entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

## COUNT II

### Violation of the Washington Consumer Protection Act, RCW 19.86.010, et seq.

**(Against All Defendants)**

99.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

100.    The Washington Consumer Protection Act (the "WCPA"), Section 19.86.020, provides that, "Unfair methods of competition and unfair or deceptive

CLASS ACTION COMPLAINT - 44

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6626892.1

acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

101.   Giga Watt's unlawful acts alleged herein were substantially made and conducted from the State of Washington, Giga Watt, Inc.'s principal place of business.

102.   As alleged herein and above, Giga Watt has engaged in unlawful, unfair and deceptive acts or practices through its conduct and representations directed at Plaintiff and the Class Members about when their mining equipment would be deployed and begin mining. These representations were made by Giga Watt on its Giga Watt websites, in connection with the marketing and sale of mining equipment on Giga Watt's websites, and in the purchase order confirmations and payment receipts provided to Plaintiff and the other the Class Members.

103.   The deployment representations made to Plaintiff and the Class were false, misleading and had the capacity to deceive a substantial portion of the public because the mining equipment was not deployed in or around the time period represented. Giga Watt omitted to disclose that the mining equipment would not be deployed and become operational, though this fact was known to it. The deployment timing representations made to Plaintiff and the Class Members were

CLASS ACTION COMPLAINT - 45

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6626892.1

1    false and misleading because Giga Watt failed to deploy the mining equipment in

2    or around the time period it represented.

3    104.    Giga Watt's unlawful acts or practices occurred in the conduct of

4    trade or commerce (i.e., in connection with the marketing and sale of the mining

5    equipment to Plaintiff and the Class Members).

6    105.    Giga Watt's unfair and deceptive acts and practices concerning the

7    marketing, sale and distribution of the mining equipment had the capacity to

8    deceive a substantial portion of the public into believing that the mining equipment

9    would be deployed and begin mining in or around the time it was to be delivered to

10    Giga Watt's facilities.

11    106.    Giga Watt's unfair and deceptive acts and practices concerning the

12    marketing, sale and distribution of the mining equipment adversely affected the

13    public interest, including because Plaintiff and other members of the public

14    engaged in consumer transactions and have been injured in the same fashion

15    through the acts committed in the course of Giga Watt's business, as alleged.

16    107.    Plaintiff and the Class Members have been injured as a direct and

17    proximate result of Giga Watt's violations of the RCW 19.86.020.

18

19

20

CLASS ACTION COMPLAINT - 46

108.    Plaintiff and the Class Members have suffered and incurred actual damages as a direct and proximate result of Giga Watt's violations of the RCW 19.86.020.

109.    Plaintiff and the Class Members are "persons" as defined in RCW 19.86.010.

110.    Plaintiff and the Class Members are entitled to pursue a claim against Giga Watt pursuant to RCW 19.86.090 and/or RCW 19.86.093 to remedy Giga Watt's violations of RCW 19.86.020.

111.    Plaintiff and the Class Members seek damages, statutory damages, exemplary damages, an injunction, restitution, disgorgement, attorney's fees and costs, and all other appropriate legal and equitable relief and remedies for Giga Watt's violations of the WCPA concerning its unlawful marketing and sale of the mining equipment.

## COUNT III

### *Violation of the New York General Business Law §§ 349, et seq.*

### (Against All Defendants)

112.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

113.    Plaintiff and the other Members of the New York Class are persons within the meaning of New York General Business Law ("GBL") Section 349(h).

CLASS ACTION COMPLAINT - 47

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6626892.1

1    Giga Watt engaged in business, trade or commerce within the meaning of GBL §

2    349(a).

3         114.    GBL Section 349(a) declares unlawful "[d]eceptive acts or practices

4    in the conduct of any business, trade or commerce or in the furnishing of any

5    service in [New York State]."

6         115.    As described herein, Giga Watt engaged in consumer-oriented

7    conduct that was misleading and directed at the consuming public.

8         116.    As a result of the deceptive and misleading promises and omissions

9    made by Giga Watt throughout the marketing and sale of its mining equipment and

10   mining services, as described above, Giga Watt has deceived Plaintiff and the

11   Class Members.

12        117.    Plaintiff and the Class Members have been injured by Giga Watt's

13   deceptive acts and practices in that they purchased mining equipment from Giga

14   Watt reasonably believing Giga Watt would deploy the equipment and provide the

15   promised mining hosting services in or around the time the mining equipment was

16   to be purportedly delivered to Giga Watt.

17        118.    Giga Watt's deceptive conduct occurred in the course of engaging in

18   trade or commerce.

19

20

CLASS ACTION COMPLAINT - 48

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6626892.1

119.   Giga Watt willfully, with disregard and/or maliciously violated GBL Section 349.

120.   Plaintiff and the Class Members have purchased mining equipment and suffered actual damages, proximately caused by Giga Watt's unfair and deceptive acts and practices.

121.   The damages suffered by Plaintiff and the Class Members were directly and proximately caused by the materially misleading acts and practices of Giga Watt, as more fully described herein.

122.   Plaintiff and the Class Members make claims for damages, attorneys' fees and costs pursuant to GBL Section 349(h). Additionally, pursuant to GBL Section 349(h), Plaintiff and the Class Members seek injunctive relief to stop the ongoing deceptive conduct.

## COUNT IV
### *Common Law Fraud*
### (Against All Defendants)

123.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

124.   Giga Watt represented to Plaintiff and the Class Members the timing when their mining equipment would be deployed and begin mining. These representations were made by Giga Watt through its statements and conduct as

CLASS ACTION COMPLAINT - 49

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6626892.1

1  described herein, including on Giga Watt websites prior to the sale of the mining

2  equipment, and in the purchase order confirmations and payment receipts provided

3  to Plaintiff and the Class Members.

4       125.   The deployment representations made to Plaintiff and the Class

5  Members were false and misleading because the mining equipment was not

6  deployed in or around the time period represented. Defendant omitted to disclose

7  that the mining equipment would not be deployed and become operational in or

8  around the time period it represented.

9       126.   Giga Watt knew its representations concerning the deployment timing

10  made to Plaintiff and the Class Members were false and untrue at the time the

11  representations were made, or recklessly made the statements with no belief in the

12  truth of the statements, and concealed the actual deployment timing, knowing

13  concealment of the actual deployment timing was material to the circumstances

14  and likely to deceive, and would have a material effect on the transaction. Giga

15  Watt knew the facts concealed were neither known nor readily accessible to

16  Plaintiff and the Class Members.

17       127.   Giga Watt made the representations and omissions concerning the

18  deployment timing with the intent to deceive Plaintiff and the Class Members and

19

20

CLASS ACTION COMPLAINT - 50

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1    to induce Plaintiff and the Class Members to purchase the mining equipment

2    and/or to pay a price higher than they would have otherwise paid.

3    128.    Plaintiff and the Class Members believed Giga Watt's representations

4    as to the timing of the deployment of the mining equipment were true and

5    materially complete, and did not know of the falsity of the representations and

6    were unaware of the facts omitted. In reliance on Giga Watt's representations, in

7    belief the representations were materially complete, and induced by the omissions

8    of fact, Plaintiff and the Class Members purchased the mining equipment and have

9    been damaged in an amount to be determined at trial.

10                              **COUNT V**

11                        *Negligent Misrepresentation*

                          **(Against All Defendants)**

12    129.    Plaintiff incorporates by reference and realleges each and every

13    allegation contained above, as though fully set forth herein.

14    130.    Giga Watt represented to Plaintiff and the Class Members the timing

15    when their mining equipment would be deployed and begin mining. These

16    representations were made by Giga Watt through its statements and conduct as

17    described herein, including on Giga Watt websites prior to the sale of the mining

18    equipment, and in the purchase order confirmations and payment receipts provided

19    to Plaintiff and the Class Members.

20

CLASS ACTION COMPLAINT - 51                    **Williams, Kastner & Gibbs PLLC**
                                               601 Union Street, Suite 4100
                                               Seattle, Washington 98101-2380
                                               (206) 628-6600

6626892.1

131.  The deployment representations made to Plaintiff and the Class Members were false and misleading because the mining equipment was not deployed in or around the time period represented. Giga Watt omitted to disclose that the mining equipment would not be deployed and become operational in or around the time period it represented.

132.  Giga Watt represented that the facts about the deployment timing of the mining equipment were true when it had no reasonable grounds for believing the representations to be true.

133.  Giga Watt made the representations and omissions concerning the deployment timing with the intent to induce Plaintiff and the Class Members to rely on such representations and omissions, and to purchase the mining equipment.

134.  Plaintiff and the Class Members justifiably believed Giga Watt's representations as to the timing of the deployment of the mining equipment were true and materially complete, and did not know of the falsity of the representations and were unaware of the facts omitted. In reliance on Giga Watt's representations, in belief the representations were materially complete, and induced by the omissions of fact, Plaintiff and the Class Members purchased the mining equipment and have been damaged in an amount to be determined at trial.

CLASS ACTION COMPLAINT - 52

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

## COUNT VI

### *Breach of Contract*

### (Against Giga Watt, Inc. and GigaWatt Pte. Ltd.)

135.  Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

136.  Plaintiff and each Class Member formed a contract with Giga Watt, Inc. and GigaWatt Pte. Ltd. The terms of that contract include the promises and affirmations of fact made by Defendants in their marketing and sales materials as described above. These sales and marketing materials constitute express and implied warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the Class Members on the one hand, and Giga Watt, Inc. and GigaWatt Pte. Ltd. on the other.

137.  Giga Watt, Inc. and GigaWatt Pte. Ltd. breached the terms of their standardized marketing and sales materials with Plaintiff and the Class Members by promising to deliver and host mining equipment by a date certain, but then failing to deliver and host the mining equipment by that time. On their retail websites and in the mining equipment purchase order confirmations and payment receipts provided to Plaintiff and the Class Members, Giga Watt, Inc. and GigaWatt Pte. Ltd. stated a time by which the mining equipment would be delivered and hosted (i.e., become operational). Defendants breached this material

CLASS ACTION COMPLAINT - 53

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

provision because the mining services did not begin as promised or in substantial conformance with the time period warranted by Defendants.

138.    All conditions precedent to the Giga Watt, Inc.'s and GigaWatt Pte. Ltd.'s liability under this standardized contract, including notice, have been performed by Plaintiff and the Class Members.

139.    As a result of Giga Watt, Inc.'s and GigaWatt Pte. Ltd.'s breaches of their contracts, Plaintiff and the Class Members have been damaged in an amount to be determined at trial.

## COUNT VII

### *Breach of the Implied Covenant of Good Faith and Fair Dealing*
### **(Against Giga Watt, Inc. and GigaWatt Pte. Ltd.)**

140.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

141.    The implied covenant of good faith and fair dealing is part of every contract.

142.    The duty to act in good faith limits one party's ability to act in a manner that does not do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits and reasonable expectations of their agreement.

CLASS ACTION COMPLAINT - 54

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

143.   Good faith and fair dealing, in connection with the discharge of performance and other duties according to contractual terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

144.   Plaintiff and each Class Member formed a contract with Giga Watt at the time they agreed to purchase mining equipment from Giga Watt for a sum certain. The terms of that contract include the promises and affirmations of fact made by Giga Watt as described above to provide the purchased mining equipment within the timeframe specified. Based on Giga Watt's conduct and representations, including Giga Watt's requirement that the mining equipment purchased by Plaintiff and the Class Members be initially deployed and hosted by Giga Watt at its "low hosting fee" mining facilities, Plaintiff and the Class Members had a reasonable expectation Giga Watt would deploy and host the mining equipment they purchased within a reasonable time period of its purported delivery to Giga Watt's mining facilities.

145.   Giga Watt breached the implied duty of good faith and fair dealing by charging Plaintiff and the Class Members for mining equipment that was to be

CLASS ACTION COMPLAINT - 55

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1  delivered to Giga Watt's facilities, and then failing to deploy and operate the

2  mining equipment when it was delivered or at a reasonable point in time thereafter.

3  146.   Plaintiff and the Class Members have sustained damages as a result of Giga

4  Watt's breach of the implied covenant of good faith and fair dealing in an amount

5  to be determined at trial.

### COUNT VIII

*Unjust Enrichment*

**(Against All Defendants)**

6

7

8  147.   Plaintiff incorporates by reference and realleges each and every

9  allegation contained above, as though fully set forth herein.

10  148.   By its wrongful acts and omissions, Giga Watt was unjustly enriched

11  at the expense of and to the detriment of Plaintiff and the Class Members. Giga

12  Watt was unjustly enriched as a result of the compensation it received for mining

13  equipment, while failing to deploy and host the equipment, and breaching the

14  duties of good faith and fair dealing it owed to Plaintiff and the Class Members.

15  149.   The only reasonable expectation of the parties was that mining

16  equipment was being purchased to use for mining, which was to begin at or near

17  the time of purchase and/or delivery to Giga Watt's mining facilities. Under the

18  circumstances, it would be unjust to allow Giga Watt to profit from the sale of

19  mining equipment to Plaintiff and the Class Members that it failed to deploy and

20

CLASS ACTION COMPLAINT - 56

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1  make operational at or near the time of purchase. Thus, equity and good conscience

2  require restitution.

3      150.  Plaintiff and the Class Members seek restitution from Giga Watt, and

4  seek an order of this Court disgorging all profits, benefits, and other compensation

5  obtained by Giga Watt from its wrongful conduct.

6  **PRAYER FOR RELIEF**

7      WHEREFORE, Plaintiff prays for relief in interim orders and by way of

8  entry of final judgment in his favor, in favor of those he seeks to represent, and

9  against Defendants:

10      A.  Declaring that this action is a proper class action, certifying the Class

11  as requested herein, designating Plaintiff as Class Representative and appointing

12  the undersigned counsel as Class Counsel;

13      B.  Ordering Defendants to pay actual damages to Plaintiff and the Class

14  Members;

15      C.  Ordering Defendants to pay punitive or exemplary damages, as

16  allowable by law, to Plaintiff and the Class Members;

17      D.  Ordering Defendants to pay statutory damages, as allowable by the

18  statutes asserted herein, to Plaintiff and the Class Members;

19

20

CLASS ACTION COMPLAINT - 57

1    E.    Awarding injunctive relief as permitted by law or equity, including

2 enjoining Defendants from continuing the unlawful practices as set forth herein,

3 and ordering Defendants to engage in a corrective advertising campaign;

4    F.    Ordering Defendants to pay attorneys' fees and litigation costs to

5 Plaintiff and the Class Members;

6    G.    Ordering Defendants to pay both pre- and post-judgment interest on

7 any amounts awarded; and

8    H.    Ordering such other and further relief as may be just and proper.

9                              **JURY TRIAL DEMAND**

10    Plaintiff demands a trial by jury for all of the claims asserted in this

11 Complaint so triable.

12    DATED this 2nd day of October, 2018.

13                                        s/ John A. Knox
                                          s/ Douglas A. Hofmann
14                                        John A. Knox, WSBA #12707
                                          Douglas A. Hofmann, WSBA #6393
15                                        Williams, Kastner & Gibbs PLLC
                                          601 Union Street, Suite 4100
16                                        Seattle, WA  98101-2380
                                          Tel: (206) 628-6600
17                                        jknox@williamskastner.com
                                          dhofmann@williamskastner.com

18

19

20

CLASS ACTION COMPLAINT - 58

6626892.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

Timothy G. Blood (*PHV* to be filed)
Thomas J. O'Reardon II (*PHV* to be filed)
Aleksandr J. Yarmolinets
  (*PHV* to be filed)
Blood Hurst & O'Reardon, LLP
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: (619) 338-1100
tblood@bholaw.com
toreardon@bholaw.com
ayarmolinets@bholaw.com

The Crypto Lawyers, LLP
Joseph J. Collement (*PHV* to be filed)
Rafael Yakobi (*PHV* to be filed)
1041 Market Street, #340
San Diego, CA  92101-7233
Tel: (805) 280-6944
joseph@thecryptolawyers.com
rafael@thecryptolawyers.com

Attorneys for Plaintiff

CLASS ACTION COMPLAINT - 59

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6626892.1