1  WILLIAMS, KASTNER & GIBBS PLLC
   DOUGLAS A. HOFMANN (#6393)
2  Two Union Square
   601 Union Square, Suite 4100
3  Seattle, WA 98101-2380
   Tel: 206/628-6600
4  206/628-6611 (fax)
   dhofmann@williamskastner.com
5
   BLOOD HURST & O'REARDON, LLP      LEE SMART, P.S., INC.
6  TIMOTHY G. BLOOD                  MARC ROSENBERG (#31034)
   501 West Broadway, Suite 1490     1800 One Convention Place
7  San Diego, CA 92101               701 Pike Street
   Tel: 619/338-1100                 Seattle, WA 98101-3939
8  619/338-1101 (fax)                Tel: 206/624-7990
   tblood@bholaw.com                 206/624-5944 (fax)
9                                    mr@leesmart.com
   Attorneys for Plaintiff
10                                   Attorneys for Defendants

11            UNITED STATES DISTRICT COURT

12            EASTERN DISTRICT OF WASHINGTON

13  REFAEL SOFAIR, individually and    Case No. 2:18-cv-00308-SAB
    on behalf of all others similarly
14  situated,                          **CLASS ACTION**

15            Plaintiff,               **JOINT STATUS REPORT**

16       v.

17  GIGA WATT, INC., GIGA WATT         District Judge Stanley A. Bastian
    PTE, LTD., and DAVID CARLSON,      Courtroom
18                                     Magistrate Judge
             Defendants.              Courtroom
19
                                      Complaint Filed:    October 2, 2018
20                                    Trial Date:         Not Set

21

22

23

24

25

26

27

28

00211148
JOINT STATUS REPORT

1    Pursuant to the Court's February 7, 2024, order, the parties submit the

2    following joint status report.

3    This action remains automatically stayed pursuant to 11 U.S.C. § 362 as it

4    is an action falling under the bankruptcy matter captioned *In re Giga Watt, Inc.*,

5    Case No. 18-03197 (E.D. Wash.), as the defendant here is the debtor in that

6    bankruptcy proceeding. The action has been pursued as an individual action,

7    rather than a class action. Plaintiff filed a claim in the bankruptcy proceeding and

8    has reached a settlement with the debtor's estate, which will take effect upon the

9    occurrence of various conditions detailed in the Settlement Agreement and

10   Release filed in *In re Giga Watt, Inc.* (Dkt. 1011-1), which was approved by the

11   bankruptcy court on October 4, 2023 (Dkt. 1031). The referenced documents are

12   attached to this status report as exhibits. The parties believe that settlement will

13   resolve plaintiff's claim in full and no further action by in this Court will be

14   needed. Pursuant to that settlement agreement, plaintiff will file a dismissal of

15   this case when the bankruptcy settlement becomes final.

16                                          Respectfully submitted,

17   Dated: February 22, 2024               WILLIAMS, KASTNER & GIBBS PLLC
                                            DOUGLAS A. HOFMANN (#6393)
18
                                            By:      s/ Douglas A. Hofmann
19                                                DOUGLAS A. HOFMANN

20                                          Two Union Square
21                                          601 Union Square, Suite 4100
                                            Seattle, WA  98101-2380
22                                          Tel: 206/628-6600
                                            206/628-6611 (fax)
23                                          dhofmann@williamskastner.com

24                                          BLOOD HURST & O'REARDON, LLP
                                            TIMOTHY G. BLOOD
25                                          501 West Broadway, Suite 1490
                                            San Diego, CA  92101
26                                          Tel: 619/338-1100
                                            619/338-1101 (fax)
27                                          tblood@bholaw.com

28                                          *Attorneys for Plaintiff*

                                    1               Case No. 2:18-cv-00308-SAB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: February 22, 2024

LEE SMART, P.S., INC.
MARC ROSENBERG (#31034)

By:    *s/ Marc Rosenberg*
        MARC ROSENBERG

1800 One Convention Place
701 Pike Street
Seattle, WA 98101-3939
Tel: 206/624-7990
206/624-5944 (fax)
mr@leesmart.com

*Attorneys for Defendants*

JOINT STATUS REPORT

00211148

1

## CERTIFICATE OF SERVICE

2    I hereby certify that on February 22, 2024, I electronically filed the

3 foregoing with the Clerk of the Court using the CM/ECF System, which will in

4 turn automatically generate a Notice of Electronic Filing (NEF) to all parties in

5 the case who are registered users of the CM/ECF System. The NEF for the

6 foregoing specifically identifies recipients of electronic notice.

7    Executed on February 22, 2024.

8

9

*s/ Douglas A. Hofman*
_____
DOUGLAS A. HOFMANN

10

WILLIAMS, KASTNER & GIBBS PLLC
Two Union Square
601 Union Square, Suite 4100
Seattle, WA 98101-2380
Tel: 206/628-6600
206/628-6611 (fax)
dhofmann@williamskastner.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00211148

JOINT STATUS REPORT

# Exhibit A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("**Agreement**") is entered into by Mark D. Waldron, in his capacity as Trustee ("**Trustee**"), and by Perkins Coie LLP, and Lowell Ness (collectively "**Perkins**"). The Trustee and Perkins are hereinafter sometimes referred to as the "**Parties**."

## I.     RECITALS

A.     Giga Watt, Inc. ("**Giga Watt**") is the debtor in the bankruptcy case entitled *In re Giga Watt, Inc.*, pending in the Eastern District of Washington, ("**Bankruptcy Court**"), Case No. 18-03197 FPC 11 ("**Bankruptcy Case**"). Mark Waldron is the duly appointed Trustee for the Giga Watt estate.

B.     Giga Watt was in the business of cryptomining. In 2017, pursuant to the GW ICO, David Carlson, Andrey Kuzenny and others, utilizing various corporations including Giga Watt, GigaWatt Pte. Ltd., and Cryptonomos Pte. Ltd., marketed and sold to the public WTT Tokens ("**Tokens**" and each a "**Token**") and Miners, which are specialized computers used in cryptomining. Giga Watt needed to build additional facilities to accommodate the cryptomining activities of all of the Tokens sold. Giga Watt was based in the Wenatchee area of Eastern Washington.

C.     Under circumstances which are disputed, Perkins provided certain legal advice regarding the Token sale and, according to the Trustee, the Miner sale, and agreed to hold in its IOLTA account proceeds from the sale of Tokens pending the issuance of Tokens to purchasers in step with Giga Watt's construction of

SETTLEMENT AGREEMENT AND RELEASE – Page 1

additional facilities. As of the purported end of the Token sale, Perkins held approximately $22.3 million of purported Token sales proceeds in its IOLTA trust account. Thereafter, Perkins disbursed these funds starting on August 8, 2017, and concluding on February 22, 2018, at which point Perkins held no remaining funds in its IOLTA trust account relating to the GW ICO.

D.      Giga Watt allegedly never completed construction of all the facilities needed to accommodate all the purchasers of Tokens. Whether there was a shortfall, and its extent, are disputed by the Parties. As Giga Watt tried to expand its facilities and operate its business, it encountered various difficulties the reasons for which are also disputed by the Parties. It filed the Bankruptcy Case on November 19, 2018 in the Eastern District of Washington. In November of 2020, the Trustee filed an adversary proceeding against Perkins in the Bankruptcy Case, Case No. 20-80031 ("**Adversary Proceeding**"), alleging that Perkins improperly released $10.8 million of Token sale proceeds from its IOLTA account. The Trustee sought to recover from Perkins the allegedly improperly disbursed funds and damages. After conducting discovery, the Trustee amended his Complaint. Perkins contested the Trustee's right to amend his Complaint pending its appeal of the Court's Order denying Perkins' motion to compel arbitration.

E.      In December of 2020, Jun Dam, on behalf of a putative class of Token purchasers, sued Perkins in the United State District Court for the Eastern District of Washington ("**District Court**"), Case No. 2:20-cv-00464 (the "**Class Action**"). In the Class Action, Dam likewise sought to recover from Perkins for the benefit of a putative class of Token holders, the $10.8 million which Perkins allegedly

SETTLEMENT AGREEMENT AND RELEASE – Page 2

Exhibit 1, Page 2 of 16

disbursed before Giga Watt built sufficient facilities to accommodate all Token purchasers, as well as other alleged damages. By way of an Amended Complaint, Eric Blomquist will be substituted for Dam as the class representative in the Class Action.

F.    Perkins has filed answers in both the Adversary Proceeding and the Class Action and has denied liability and asserted various affirmative defenses. In addition, Perkins named the Class as a third-party defendant in its Answer to the Trustee's First Amended Complaint. In the Adversary Proceeding, there has been considerable motion practice, including an appeal to the Ninth Circuit of a denial of Perkins' motion to compel arbitration ("**Arbitration Appeal**"), which is still pending, and the production of over one terabyte of digitally stored documents. To date, the costs of litigation have been substantial and are expected to continue to be substantial, not to mention the disruption involved for all concerned.

G.    In addition to the Adversary Proceeding and the Class Action, there have been disputes between the Trustee and Dam regarding whether both are entitled to recover from Perkins for the misconduct alleged in the respective actions, and who, as between them, is entitled to priority in pursuing their respective claims against Perkins. In this regard, the Trustee has obtained a ruling in the Bankruptcy Court that three of the claims asserted in the Class Action belong to the Giga Watt estate and are subject to the automatic stay provisions of 11 U.S.C. § 362; and has obtained a preliminary injunction in an adversary proceeding filed in the Bankruptcy Case, No. 21-80053, prohibiting the Class from pursuing any claim against Perkins until the Adversary Proceeding is completed.

SETTLEMENT AGREEMENT AND RELEASE – Page 3

Exhibit 1, Page 3 of 16

The Class has appealed to the District Court the Automatic Stay Order and the Preliminary Injunction Order under case No. 2:21-cv-0291 SAB ("**Consolidated Appeals**").

H.    On January 20, 2023, United States Bankruptcy Judge Benjamin P. Hursh, acting as a mediator, conducted an in-person mediation of both the Adversary Proceeding and the Class Action. Discussions continued after the in-person meeting. Pursuant to this mediation, without admission of liability or wrongdoing, settlements of both the Adversary Proceeding and the Class Action were achieved, subject to various conditions and approvals. Accordingly, the Trustee and Perkins hereby agree as follows:

## II.    DEFINITIONS

A.    As used in this Agreement and the attached exhibits, the following terms shall have the meanings set forth below, unless this Agreement specifically provides otherwise:

1.    "Bankruptcy Court Settlement Order" means an Order approving this Agreement as fair, equitable and in the best interests of Giga Watt's bankruptcy estate, and issuing such other findings and determinations as the Court and/or the Parties deem necessary and appropriate to implement and conclude this Agreement consistent with the terms of this Agreement.

2.    "Class" means all persons or entities who owned one or more Tokens on November 19, 2018 as defined more fully in the Class Settlement Agreement,  attached hereto as Exhibit 1.

SETTLEMENT AGREEMENT AND RELEASE – Page 4

3.      "Class Settlement Agreement" or "Class Settlement" means the Stipulation of Settlement to be entered into by the named plaintiff and proposed class representative on behalf of a class of WTT Token holders, Perkins Coie LLP, Perkins Coie U.S., P.C., Perkins Coie California, P.C., and Lowell Ness, in substantially the form as Exhibit 1.

4.      "District Court Final Judgment and Approval Order" means the District Court's Order, in substantially the form of Exhibit 1.E, confirming the certification a class for settlement purposes, approving the Class Settlement as fair, adequate, and reasonable and issuing such other findings and determinations as the District Court and/or the parties to the Class Settlement deem necessary and appropriate to implement and conclude the Class Settlement.

5.      "District Court Preliminary Approval Order" means the order in substantially the form of Exhibit 1.D to be entered by the District Court preliminarily approving the Class Settlement, setting the date of a final approval hearing, conditionally certifying a class for settlement purposes as more particularly described in the Class Settlement Agreement which is attached hereto as Exhibit 1, and approving the form and manner of notice of the Class Settlement,

6.      "Effective Date" means the latest in time of:

a)      The date on which the time to appeal entry of the Bankruptcy Court Settlement Order has expired if no appeal has been taken from entry of the Bankruptcy Court Settlement Order.

b)      The date on which the time to appeal entry of the District Court Final Judgment and Approval Order has expired if no appeal has been taken from the entry of the District Court Final Judgment and Approval Order.

c)      In the event that an appeal or other effort to obtain review of either the Bankruptcy Court Settlement Order or District Court Final Judgment and Approval Order has been initiated, the date after all such appeals or requests for other review have finally concluded on terms that affirm the Bankruptcy Court Settlement Approval Order or District Court Final Judgment and Approval Order, as applicable, and all such appeals or reviews are no longer subject to further review.

d)      The occurrence of each condition set forth in this Agreement.

e)      If the Parties agree in writing, any other agreed date that is earlier than the Effective Date, provided that all conditions to the Class Settlement Agreement have been satisfied.

7.      "GW ICO" refers to the marketing and sale of WTT Tokens and Miners by Giga Watt, Inc., GigaWatt Pte., Ltd., and/or Cryptonomos Pte. Ltd., starting in May 2017, utilizing various websites and the Giga Watt Token Launch White Paper, dated May 2017.

8.      "Litigation" means the Bankruptcy Case, the Adversary Proceeding, and the Arbitration Appeal.

9.      "Perkins' Counsel" means Byrnes Keller Cromwell LLP and Munding P.S.

SETTLEMENT AGREEMENT AND RELEASE – Page 6

10. "Sofair Stipulation" means that certain stipulation between the Trustee and Rafael Sofair in substantially the form as Exhibit 2.

11. "Trustee's Counsel" means Potomac Law Group PLLC.

## III. SETTLEMENT TERMS AND AGREEMENT

A. Payment by Perkins. Perkins will pay to the Trustee the total sum of THREE MILLION dollars ($3,000,000 USD) no later than fifteen business days after the Effective Date by wire transfer as set forth in Schedule A, appended hereto.

B. Mutual Release. The Trustee and Perkins hereby mutually release each other and each other's insurers, former or current partners, shareholders, owners, employees, affiliate entities, agents, attorneys, officers, directors, and/or any such person or entity acting on their behalf from any and all claims, losses, damages, attorneys' fees, expenses and costs, sanctions, disgorgement of fees, fines or penalties, whether accrued or not, whether known or unknown, of any type or nature.

C. Broad Intent. This mutual release is intended to be broad, and to include every dispute or claim of any type, as well as any and all claims arising from unknown or unsuspected facts. In this regard, the Parties acknowledge that discovery has not been completed in either the Adversary Proceeding or in the Class Action and that there may be additional facts, unknown to them at the time of entering into this Agreement, which would influence or perhaps change their willingness to enter into this Agreement. Nevertheless, given the cost and

SETTLEMENT AGREEMENT AND RELEASE – Page 7

Exhibit 1, Page 7 of 16

uncertainty of litigation, the parties have decided to proceed, based on their present knowledge, and enter into this Agreement.

    D.    <u>1542 Waiver</u>. In addition, with respect to the claims released by this Agreement, the Parties specifically acknowledge and affirmatively waive any rights or benefits available to them under California Civil Code Section 1542. California Civil Code Section 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

    E.    The Parties hereby waive any and all federal and state statues similar in substance, meaning, or application to California Civil Code section 1542.

    F.    <u>Litigation Bar</u>. The Trustee agrees not to assert any claim or demand against non-parties to this Agreement arising from or related to the GW ICO; provided that nothing in this Agreement shall prevent the Trustee from objecting to or asserting defenses, including affirmative defenses, to any claim or demand that is made against Giga Watt, Inc., the Trustee, or the Trustee's professionals, including Trustee's Counsel, even if such claim or demand arises from or relates to the GW ICO.

SETTLEMENT AGREEMENT AND RELEASE – Page 8

Exhibit 1, Page 8 of 16

G.    Conditions.  This Agreement is subject to and conditioned upon the occurrence of the following events:

1.    Bankruptcy Court Settlement Order. The Bankruptcy Court Settlement Order is entered and becomes final and nonappealable. If the Bankruptcy Court Settlement Order is appealed, then such Bankruptcy Court Settlement Order is affirmed without modification or the appeal is dismissed with prejudice.

2.    District Court Final Judgment and Approval Order. The District Court Final Judgment and Approval Order is entered and becomes final and nonappealable. If the District Court Final Judgment and Approval Order is appealed, then such District Court Final Judgment and Approval Order is affirmed without modification or the appeal is dismissed with prejudice such that the transaction set forth in the Class Settlement Agreement is successfully concluded. In this regard, Perkins intends to and will make its best effort to pay the settlement amounts due under this Agreement and under the Class Settlement Agreement at the same time.

3.    Order Dismissing the Consolidated Appeals. An Order of the District Court dismissing the Consolidated Appeals with prejudice and without costs or fees to either side is entered and becomes final and nonappealable.

4.    Order Approving Sofair Stipulation. An Order of the Bankruptcy Court approving the Sofair Stipulation is entered and becomes final and nonappealable and in connection therewith, Claim No. 70-1, filed by Refael Sofair on February 15, 2019 in the Bankruptcy Case is withdrawn with prejudice

SETTLEMENT AGREEMENT AND RELEASE – Page 9

Exhibit 1, Page 9 of 16

and all claims asserted against Giga Watt, Inc. in the action filed on October 2, 2018, by Refael Sofair, in the District Court, *Sofair v. Giga Watt, Inc., GigaWatt Pte. Ltd., David Matthew Carlson and Does 1-10*, Case No. 2:18-cv-00308-SAB are dismissed with prejudice.

     H.    <u>Cooperation</u>. The Parties agree to cooperate with one another to obtain all necessary approvals of this Agreement and to meet the conditions of this Agreement, including the Trustee will file the motion(s) and other documents in the Bankruptcy Court that are necessary for this approval.

     I.    <u>Dismissal of Pending Actions and Appeals</u>. Upon payment of the Settlement Amount, the Parties will dismiss the Adversary Proceeding and the Arbitration Appeal with prejudice and without costs or fees to either side.

     J.    <u>No Admission of Liability</u>. This Agreement reflects the compromise and settlement of disputed claims among the Parties and is for settlement purposes only. Neither the fact of, or any provision contained in this Agreement or its exhibits, nor any action taken hereunder, shall constitute, be construed as, or be admissible in evidence as an admission of: (a) any fact recited herein; (b) the validity of any claim or allegation by any Party in the Litigation, (c) the validity of any defense or argument asserted by any Party in the Litigation, or (d) any wrongdoing, fault, violation of law, or liability of any kind on the part of any Party or their respective counsel.

     K.    <u>Entire Agreement</u>. This Agreement, including all exhibits, shall constitute the entire agreement between Perkins and the Trustee with respect to the Litigation. This Agreement shall supersede any previous settlement agreements,

term sheets, representations, communications and understandings among the Parties with respect to the subject matter of the Agreement.

L.    <u>New or Different Facts: No Effect</u>. Except as provided herein, this Agreement shall be, and remain, in effect despite the discovery or existence of any new or additional fact, or any fact different from that which either Party now knows or believes to be true. Notwithstanding the foregoing, nothing in this Agreement shall be construed as, or constitute, a release of any Party's rights to enforce the terms of this Agreement.

M.    <u>Execution in Counterparts</u>. The Agreement may be executed by the Parties in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Facsimile signatures or signatures sent by email be treated as original signatures and shall be binding.

N.    <u>Notices</u>. Whenever this Agreement requires or contemplates that one Party shall or may give notice to the other, notice shall be provided in writing by first class US Mail and email to:

1.    If to Defendant or Defendant's Counsel:

Ralph E. Cromwell Jr.
Byrnes Keller Cromwell LLP
1000 2nd Ave., 38th Fl.
Seattle, WA 98104
Tel.: (206) 622-2000
Email: rcromwell@byrneskeller.com

2.    If to the Trustee or Trustee's Counsel:

> Pamela M. Egan
> Potomac Law Group PLLC
> 2212 Queen Anne Ave., #836
> Seattle, WA 98109
> Tel.: 415-297-0132
> Email: pegan@potomaclaw.com

O.    <u>Good Faith</u>. The Parties agree that they will act in good faith and will not engage in any conduct that will or may frustrate the purpose of this Agreement. The Parties further agree, subject to Court approval as needed, to reasonable extensions of time to carry out any of the provisions of this Agreement.

P.    <u>Publicity</u>. To the extent any Party makes any public statements regarding this Agreement, any such statements shall be consistent with the Court-approved documents that comprise this Agreement or otherwise agreed on by the Parties in writing in advance.

Q.    <u>Binding</u>. This Agreement is binding on all predecessors, successors, heirs, affiliates, partners, companies under common control with any of the foregoing, assigns, past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, and all persons acting by, through, under, or in concert with any Party.

R.    <u>Arms-Length Negotiations</u>. The determination of the terms and conditions contained herein and the drafting of the provisions of this Agreement has been by mutual understanding after negotiation, with consideration by and participation of the Parties hereto and their counsel. This Agreement shall not be

construed against any Party on the basis that the Party was the drafter or participated in the drafting. Any statute or rule of construction that ambiguities are to be resolved against the drafting party shall not be employed in the implementation of this Agreement and the Parties agree that the drafting of this Agreement has been a mutual undertaking.

S.    <u>Waiver</u>. The waiver by one Party of any provision or the waiver of any breach of the Agreement shall not be deemed a waiver of any other provision or subsequent breach of the Agreement.

T.    <u>Variance</u>. In the event of any variance between the terms of this Agreement and any of the exhibits hereto, the terms of this Agreement shall control and supersede the exhibit(s).

U.    <u>Taxes</u>. No opinion, representation or guarantee concerning the tax consequences of the Agreement is given or will be given by the Trustee's Counsel or Perkins' Counsel.

V.    <u>Modifications in Writing</u>. The Agreement may not be changed, modified, or amended except in a writing signed by the Parties or their counsel, and, if required, approved by this Court. The Parties contemplate that the exhibits to the Agreement may be modified by subsequent agreement of the Parties so long as the modifications do not alter the substantive terms of the Agreement or reduce the rights and benefits of the Parties.

W.    <u>Retain Jurisdiction</u>. The Bankruptcy Court shall retain jurisdiction with respect to the implementation, interpretation, and enforcement of the terms of this Agreement. The Parties agree that the effect of the release given to the Giga

SETTLEMENT AGREEMENT AND RELEASE – Page 13

Watt Estate, Mark D. Waldron as Chapter 7 Trustee of the Giga Watt Estate, and agents and attorneys of the Giga Watt Estate in the Class Settlement Agreement will be determined by the Bankruptcy Court to the extent that the release affects matters pending in the Bankruptcy Court.

X.      <u>Reliance on Own Counsel</u>. In entering into this Agreement, the Parties acknowledge that they have relied upon the legal advice of their respective attorneys, who are the attorneys of their own choosing, that such terms are fully understood and voluntarily accepted by them, and that, other than the consideration set forth herein, no promises or representations of any kind have been made to them by the other Party. The Parties represent and acknowledge that in executing this Agreement they did not rely, and have not relied, upon any representation or statement, whether oral or written, made by the other Party or by that other Party's agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement or otherwise.

Y.      <u>Choice of Law</u>. This Agreement is governed by and shall be construed and enforced in accordance with Washington law.

Z.      <u>Computation of Time</u>. All deadlines and time periods prescribed in this Agreement, to the extent they are not otherwise specified, shall be calculated pursuant to Fed.R.Bank.P. 9006.

[<em>Signatures appear on next page.</em>]

Exhibit 1, Page 14 of 16

SETTLEMENT AGREEMENT AND RELEASE – Page 14

IN WITNESS WHEREOF, the Parties hereto have caused the Agreement to be executed as of the last date set forth below.

Dated: September ___, 2023    Mark D. Waldron

By: _____
In his capacity as Chapter 7 Trustee in the Bankruptcy Case


Dated: September ___, 2023    PERKINS COIE LLP

By: _____

Its:    Partner and General Counsel
_____


Dated: September ___, 2023    LOWELL NESS

_____
per email authorization


SETTLEMENT AGREEMENT AND RELEASE – Page 18
*TRUSTEE'S DRAFT: 8/25/2023*

Exhibit 1, Page 15 of 16

<u>SCHEDULE OF EXHIBITS</u>

Exhibit 1    Class Settlement Agreement

                Exhibit 1.A         Long Form Notice

                Exhibit 1.B         Email Notice

                Exhibit 1.C         Postcard Notice

                Exhibit 1.D         District Court Final Judgment and Approval Order

                Exhibit 1.E         District Court Preliminary Approval Order

                Exhibit 1.F         Claim Form

Exhibit 2    Sofair Stipulation

Exhibit 1, Page 16 of 16

# Exhibit B

**So Ordered.**

**Dated: October 4th, 2023**

*Frederick P. Corbit*

**Frederick P. Corbit**
**Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| In re: | Case No. 18-03197-FPC |
| GIGA WATT, INC. | **ORDER (1) APPROVING SETTLEMENT AGREEMENT WITH PERKINS COIE LLP AND LOWELL NESS; (2) APPROVING STIPULATION WITH REFAEL SOFAIR; AND (3) APPROVING STIPULATION WITH TIMUR USMANOV** |
| Debtor. |  |

THIS MATTER came before the court on the Chapter 7 Trustee's Motion for Order Approving Settlement ("the Motion") (ECF No. 1007). The Motion requests approval of three agreements: (1) a settlement between the Trustee and Perkins Coie LLP and Lowell Ness; (2) a stipulation with Refael Sofair that settles his claim; and (3) a stipulation with Timur Usmanov. Benjamin Ellison, purporting to represent the Unsecured Creditors Committee, objected to the Motion. (ECF No. 1021). The Court considered the record and related pleadings and exhibits and heard argument on October 3, 2023.

**ORDER APPROVING SETTLEMENTS** – Page 1

Based on the foregoing, the Court enters the following findings of fact, conclusions of law, and order:

## INTRODUCTION

Giga Watt, Inc. ("Giga Watt") was in the business of building and running a large-scale cryptocurrency mining operation. Giga Watt's business failed, and that failure resulted in this bankruptcy proceeding and several lawsuits. On November 19, 2020, the Trustee filed an adversary action in this Court against four defendants: (1) Perkins Coie ("Perkins"), a law firm; (2) Lowell Ness, a partner in the Perkins law firm; (3) Giga Watt PTE, Ltd.; and (4) Andrew Kuzenny, the CEO of Giga Watt Singapore. (Adv. No. 20-80031, ECF No. 6) Eventually, the Trustee amended the Complaint, which included removing defendants Andrey Kuzenny and Giga Watt Singapore and adding defendant Timur Usmanov. (Adv. No. 20-80031, ECF No. 135)

A second lawsuit was filed December 16, 2020 by Jun Dam, a WTT token holder, as the nominal plaintiff, in the District Court against defendants Perkins, Lowell Ness, and Perkins' affiliates (U.S. Eastern District of Washington Case No. 20-cv-00464-SAB, ECF No. 1). Both lawsuits are based on the same core factual allegations that (i) Perkins agreed to hold millions of dollars in escrow until Giga Watt met certain milestones in construction, but Perkins released the money

**ORDER APPROVING SETTLEMENTS** – Page 2

prematurely, and (ii) Perkins' premature release of the escrowed funds caused significant damages.

Eventually, this Court found that three of the six class claims belonged exclusively to the estate, not the class, and subsequently granted the Trustee's request for an injunction staying the remaining three Class claims in the District Court. (ECF No. 921; Adv. No. 21-80053, ECF No. 38)

## FINDINGS OF FACT

1.    The procedural history of this case is complex. For several years, the parties have been actively litigating various issues related to the bankruptcy of Giga Watt, Inc.

2.    To settle the related cases, Perkins has agreed to pay the Giga Watt estate $3 million and to pay WTT Token holders $4.5 million, pursuant to two agreements: (1) between Perkins and the Trustee; and (2) between Perkins and a class of WTT token holders.

3.    The proposed settlement agreement is subject to and conditioned upon the occurrence of several events, generally described as: (i) the Bankruptcy Court enters a final and nonappealable Settlement Order; (ii) the District Court enters a Final Judgment and Approval Order such that the transaction set forth in a separate Class Settlement Agreement is successfully concluded; (iii) The District Court enters an Order Dismissing the Consolidated Appeals with prejudice and without

**ORDER APPROVING SETTLEMENTS** – Page 3

costs or fees; and (iv) the Bankruptcy Court enters an order approving the Sofair Stipulation; and (v) the District Court dismisses with prejudice the lawsuit *Sofair v. Giga Watt, Inc., GigaWatt Pte. Ltd., David Matthew Carlson and Does 1-10,* Case No. 2:18-cv-00308-SAB. (See ECF 1011-1, at pp. 10-11)

4.     The proposed agreement settles the following cases and appeals: (i) Bankruptcy Court Adversary proceeding *Waldron v. Perkins et al,* No. 20-80031; (ii) Perkins' appeal of the Bankruptcy Court's order denying the request to arbitrate pending in the Ninth Circuit Court of Appeals Case No. 22-35104; (iii) Jun Dam's District Court putative class action against Perkins Coie, Case No. 20-00464; (iv) the Trustee's injunctive relief bankruptcy adversary case against Jun Dam, Case No. 21-80053; (v) Jun Dam's appeals of the bankruptcy court's orders staying and enjoining the District Court class action, Case No. 21-00291; and (vi) a RICO action and Mr. Sofair's purported class claim.  (See ECF No. 1009, pp.2-3)

5.     The Trustee has reviewed Debtor's affairs, operated Debtor's facility, reviewed books, records, and documents from third parties. (ECF No. 1009 at p.2) The Trustee opined that in his business judgment, the settlement with Perkins was "reasonable, fair and equitable." (ECF No. 1009 at p.2).

6.     The total amount of funds that the Trustee alleged Perkins prematurely released totaled $10.8 million. The proposed total $7.5 million settlement amount is reasonable and fair under the present circumstances.

**ORDER APPROVING SETTLEMENTS** – Page 4

7.    Perkins disagrees with the Trustee's claim amount; in the absence of an agreement, Perkins intends to continue litigating and the case could take another five years or more to resolve. (ECF No. 1009 at p. 3-4)

8.    Collecting a judgment against Perkins would likely not pose a significant problem but collecting a judgment against Mr. Usmanov would be problematic and unrealistic.

9.    The Trustee describes, and the Court has witnessed, the litigation between the parties was "complex, burdensome, and time-consuming." (ECF No. 1009 at p. 4) Mr. Dam's putative class action complicated the cases. Both Perkins and Mr. Dam have demonstrated a willingness to appeal unfavorable court decisions and thus it is likely that both Perkins and Dam would continue to appeal if the cases proceed. (ECF No. 1009 at p. 4)

10.    The litigation was expensive compared to the estate's resources. The estate had $371,029.44 in unencumbered funds, and the Trustee is holding an additional $112,000 in sales proceeds, pending claims by creditors to ownership of the property sold. (ECF No. 1009 at p. 4)

11.    The estate paid $87,050 in attorney related to the injunction orders and the Perkins appeals cost another $60,3209 in fees. The pace of the legal actions was accelerating. (ECF No. 1009 at p. 5)

**ORDER APPROVING SETTLEMENTS** – Page 5

12.    The cost of discovery was estimated at approximately $65,000. Costs would continue to accumulate in an amount of at least $500 per month. (ECF No. 1009 at p. 5)

13.    The settlement will serve the paramount interest of the creditors because the creditors will receive a distribution from the estate. The Trustee expects to pay all Chapter 7 and 11 administrative expenses in full. (ECF No. 1009 at p.6)

14.    The WTT Token Holders will receive $4.5 million directly from Perkins. (ECF No. 1009 at p.7)

15.    The Sofair Stipulation will end the class action litigation alleging millions of dollars in damages against the estate in exchange for $16,977. The cost of defending the Sofair lawsuit would greatly exceed the settlement amount. (ECF No. 1009, p.7)

16.    Dismissing the claims against Mr. Usmanov is reasonable because the claims are fact-intensive and it is doubtful a judgment against Mr. Usmanov would be collectable. (ECF No. 1009, p. 7)

17.    The settlement with Perkins will pay administrative claims and provide a meaningful distribution to creditors, without the significant delay and expense of ongoing litigation in the Bankruptcy Court, District Court and Court of Appeals.

**ORDER APPROVING SETTLEMENTS** – Page 6

18.    A limited objection was filed by attorney Benjamin Ellison, who asserted he represented the Unsecured Creditors Committee. Mr. Ellison requests a 10-day delay in approval of the settlement. (ECF No. 1021) Mr. Ellison asserts that "he is in possession of information relating to the financial benefit that Perkins Coie received from the relevant transactions at issue.…" (ECF No. 1021 at p. 2) Earlier, Mr. Ellison relayed the same message to the Trustee, who chose not to pursue this information. Mr. Ellison contends that the Trustee cannot bear his burden of showing the compromise is fair and equitable because "the Trustee's counsel erected blinders to potentially knowing the full strength of their substantive case…."  (ECF No. 1029 at p. 3)

19.    In the objection, Mr. Ellison did not disclose "information," and instead vaguely described the information as: "relatively sensitive and there is the chance that aspects of the information may be slightly different from how it is understood, but if correct, there probably is a strategic benefit to limiting the circle of persons who are aware of the issue." (ECF No. 1029 at pp. 3-4) Mr. Ellison requested the Bankruptcy Court "make an independent assessment of the relevance of the information that Ms. Egan refused to consider," and allow a ten-day delay so that Mr. Ellison could consult with the mediator and possibly order a 2004 exam of Perkins Coie. (ECF No., 1029 at p. 4)

**ORDER APPROVING SETTLEMENTS** – Page 7

20.    Perkins responded, "it is very unlikely that Perkins would have paid any additional sums to the Trustee in settlement based on this unidentified information." (ECF No. 1028 at p. 1) Perkins' representatives spent months reviewing 1.2 terabytes of information from the Debtor. After the extensive review, Perkins "entered settlement discussions with carefully derived views about the merits of the Trustee's case, based on extensive documentation contained in the 1.2 terabytes of files produced by the debtor, and from other sources, such as documents obtained from third parties and informal interviews of potential witnesses." (ECF No. 1028 at pp. 1-2) "Perkins negotiated the settlement being submitted for approval on the basis of very extensive evidence which was carefully considered." (ECF No. 1028, p. 2)

21.    The unsecured creditors committee was dissolved when the bankruptcy case was converted from a chapter 11 to a chapter 7.

22.    The parties on each side spent considerable time and resources investigating the facts and circumstances of the case against Perkins. Mr. Ellison fails to persuade this Court that the undisclosed "information" is material and thus would provide a reason to delay approval of the settlement agreement.

23.    This Court has extensive experience with this case and the various related litigation. The proposed settlement is fair and equitable.

**ORDER APPROVING SETTLEMENTS** – Page 8

24.     The Notice of Motion complied with all applicable rules and satisfies due process.

## CONCLUSIONS OF LAW

1.     Rule 9019(a) authorizes the bankruptcy court to approve a compromise or settlement on the trustee's motion and after notice and a hearing.

2.     "The bankruptcy court has great latitude in approving compromise agreements." *Woodson v. Fireman's Fund Insurance Co. (In re Woodson),* 839 F.2d 610, 620 (9th Cir. 1998).

3.     The bankruptcy court must consider all "factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). The court may approve the settlement if it is "fair and equitable." *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986). The trustee bears the burden of proving to the bankruptcy court that the settlement is fair and equitable and should be approved. *Id.*at 1382.

4.     In determining if a proposed settlement is fair and equitable, a bankruptcy court must consider: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in collecting a judgment if obtained; (c) the complexity of the litigation, and the expense, inconvenience and delay related

**ORDER APPROVING SETTLEMENTS** – Page 9

to the litigation; and (d) the paramount interest of the creditors and a proper deference to the creditors' reasonable views about the settlement. *In re A & C Properties*, 784 F.2d at 1381.

5.    The Trustee met the burden to prove the proposed settlement is fair and equitable.

6.    The limited objection to the proposed settlement presented no basis in fact and provided no reason to delay approval of the settlement agreement.

7.    In considering the *A&C Properties* factors, the Court concludes that the settlement proposed by the Trustee is fair and equitable.

8.    The Notice of Motion complied with all applicable rules and satisfies due process.

## ORDER

IT IS ORDERED:

1.    The Trustee's Motion (ECF No. 1007) is **GRANTED**;

2.    The Trustee's Settlement Agreement is approved; and

3.    The Trustee is authorized to enter into the Trustee Settlement Agreement, the Sofair Stipulation and the Usmanov Stipulation, as described in the Motion.

///End of Order///

**ORDER APPROVING SETTLEMENTS** – Page 10